**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, et al., Appellants**

v.

**CIVIL AERONAUTICS BOARD, et al.**

**No. 84–5225.**

United States Court of Appeals, District of Columbia Circuit.

Argued 11 Sept. 1984.

Decided 30 Oct. 1984.

Appeal from the United States District Court for the District of Columbia (Civil Action No. 83–03047).

Gary Green, Washington, D.C., with whom R. Russell Bailey and Sarah Perry Fleischer, Washington, D.C., were on the brief, for appellants.

Catherine Lanctot, Atty., Dept. of Justice, of the Bar of the District of Columbia Court of Appeals, Washington, D.C., pro hac vice, by special leave of the Court, with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before TAMM, WILKEY and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

The Air Line Pilots Association ("ALPA") sued the Civil Aeronautics Board ("CAB" or "the Board") in federal district court, complaining of unreasonably delayed agency action and bias. The district court found that it had jurisdiction over the matter, and then dismissed ALPA's complaint for failure to state a claim for which relief may be granted.[1] We find the district court in error as to jurisdiction, and hold that as to petitions to compel unreasonably delayed agency action, and as to claims of bias in the agency, exclusive jurisdiction lies in the Court of Appeals. The basis of our jurisdictional holding is explained in the companion case of *Telecommunications Research and Action Center v. FCC*[2] ("TRAC"). Having found exclusive jurisdiction in the Court of Appeals, we also find that appellants are entitled to some relief on the merits.

## I. BACKGROUND

By enacting the Air Line Deregulation Act of 1978 ("ADA"),[3] Congress subjected the air line industry to the forces of the marketplace. Congress anticipated that deregulation would cause some injury to air line employees, and sought to provide limit-ed assistance. Section 43 of the ADA[4] requires CAB to determine whether complaining employees have lost their jobs because of a "qualifying dislocation," which the Act defines as a bankruptcy or major contraction in an employer's work force, the "major cause of which is the change in the regulatory structure provided by the Act."[5] The Board began receiving applications for these determinations (that an applicant has lost his job primarily because of deregulation), called "section 43 determinations," as early as January 1979. By October 1983, the Board still had not taken direct action on any of these applications. No hearings had been held.

In the meantime, Braniff International Airways had ceased operations and declared bankruptcy in May 1982. During the summer of 1982, CAB's Chairman MacKinnon made several statements to the effect that Braniff's bankruptcy was not caused by deregulation.[6] ALPA alleges that these statements conclusively demonstrate prejudgment of the critical issue in a section 43 determination—causation.[7]

ALPA's complaint filed with the district court presents two major issues: (1) whether CAB has unreasonably delayed acting on the section 43 determinations, and (2) whether CAB Chairman MacKinnon, as well as other Board members through him, have shown prejudgment of the issue by MacKinnon's statements concerning the cause of Braniff's bankruptcy. This case, together with its companion case, present a third issue: whether jurisdiction over such cases, which seek relief that may affect the Court of Appeals' future statutory power of review of final agency action, properly lies in the district court, concurrently in the district court and the Court of Appeals, or exclusively in the Court of Appeals. We

---

1.  Joint Appendix at 3–14.

2.  750 F.2d 70 (D.C.Cir. 1984).

3.  Pub.L. No. 95–504, 92 Stat. 1705 (1978).

4.  49 U.S.C. § 1552 (1982).

5.  *Id.* at (a)(1), (h), (i).

6.  Brief for Appellees at 29, Joint Appendix at 95.

7.  Brief for Appellants at 10–16.

will deal with each of these issues, turning first to the jurisdictional issue.

## II. ANALYSIS

### A. *Jurisdiction*

■ Following the district court's dismissal, ALPA filed notice of appeal and moved for expeditious consideration and summary reversal. This Court denied the motion for summary reversal and granted the motion for expeditious consideration. Because the cases presented a significant jurisdictional question left open by our prior case law, we specifically requested that the parties in this case and in TRAC address the jurisdictional issue.[8] We now hold that jurisdiction over cases which seek relief that may affect our future statutory power of review over final agency action lies exclusively in the Court of Appeals.

We leave full explanation of the principles governing our jurisdictional decision to our opinion in TRAC.[9] We note, however, that the basis of our holding is the exclusive jurisdiction given to the Court of Appeals over review of final agency action. In the case of the Civil Aeronautics Board, this exclusive jurisdiction is provided by Section 1006 of the Federal Aviation Act.[10] This grant of exclusive jurisdiction over final action must be read in conjunction with the All Writs Act, which provides that "the Supreme Court and all courts established by an act of Congress may issue all writs necessary or appropriate in aid of their prospective jurisdiction . . . ."[11] Read together with the relevant case law, these statutes form the foundation of the principle of exclusive Court of Appeals' jurisdiction over cases which affect its future jurisdiction over final agency action.

■ Those principles apply just as squarely to a claim of bias on mandamus (an issue only in this case) as they do to a claim of unreasonable delay (an issue common to this case and TRAC). The bias claim has equal power to affect our future jurisdiction over final agency action. In both instances, the Court of Appeals is acting in aid of its future jurisdiction, and has exclusive jurisdiction.

There is one important difference between this case and TRAC. In this case, ALPA originally filed its complaint in the district court, and appealed to this Court after dismissal by the district court. Under a very technical analysis, if (as we have held) the district court had no jurisdiction, then this Court could not obtain jurisdiction on appeal. However, it will not be necessary to dismiss this suit for lack of jurisdiction. Congress has provided for just such a turn of events with a statute allowing transfer to cure lack of jurisdiction.[12] The statute states that when a civil action is filed in a court that lacks jurisdiction (including cases on appeal), that court shall,

> if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.[13]

We have already acknowledged the urgency of this case by granting ALPA's motion for expeditious consideration. Even the district court's dismissal of this case was "without prejudice to plaintiff's rights to invoke the jurisdiction of the Court of Appeals."[14] No useful purpose would be served by forcing ALPA to start over. In addition, we recognize that the precedent in this circuit may have implied that the district court had concurrent jurisdiction over

---

8. Order No. 84–1035 (D.C.Cir. 12 June 1984).

9. *Telecommunications Research & Action Center v. FCC,* Nos. 84–1035 and 84–5077, slip op. at 7–17 (D.C.Cir. 24 Oct. 1984).

10. 49 U.S.C. § 1486(f) (1982).

11. 28 U.S.C. § 1651(a) (1982).

12. 28 U.S.C. § 1631 (1982).

13. *Id.*

14. Joint Appendix at 14.

these claims. Therefore, we find it "in the interest of justice" to proceed on the merits of this case as though it originally had been brought in this Court.

## B. Unreasonable Delay

### 1. *Interlocutory Review*

It should be noted that normally the most efficient means of reviewing agency action is to wait until the relevant agency proceedings have concluded. This is related to the general judicial doctrine of ripeness, as well as notions of effective agency administration. In *Abbott Laboratories, Inc. v. Gardner* [15] the Supreme Court explained that the

> basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. [16]

As this Court explained in *Association of Nat'l Advertisers, Inc. v. FTC,* [17] withholding review until after final agency action "permits an administrative agency to develop a factual record, to apply its expertise to that record, and to avoid piecemeal appeals." [18]

■ Despite this general policy, claims of unreasonable delay fall within a narrow class of interlocutory appeals from agency action over which we appropriately should exercise our jurisdiction. By definition, a claim of unreasonable delay cannot await final agency action before judicial review, since it is the very lack of agency action which gives rise to the complaint. It is also obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action. In addition, judicial review of claims of unreasonable delay do not prematurely inject the courts into the agency's consideration of the merits of the issue before it. Finally, agencies operate under a mandate to decide matters in a reasonable time, [19] and Congress has instructed statutory review courts to compel agency action which has been unreasonably delayed. [20]

### 2. *Analysis of the Delay*

CAB first began receiving applications for section 43 benefits in January 1979. [21] For several years, no direct action was taken on these applications. The Board did set out preliminary orders which interpreted section 43 and set guidelines for the Administrative Law Judges. [22] However, as of October 1983, the time of the filing of ALPA's complaint, *no hearings* had been held on *any* of the applications. [23] In May 1984 CAB scheduled evidentiary hearings, over five years after it first received applications. As of the time of oral arguments in this case, one of those hearings had been completed, with no disposition yet by the Board. [24]

■ This Court has decided several cases involving claims of unreasonable de-

---

**15.** 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**16.** *Id.* at 148–49, 87 S.Ct. at 1515.

**17.** 627 F.2d 1151 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980).

**18.** *Id.* at 1156 (citing *McKart v. United States,* 395 U.S. 185, 193–94, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

**19.** 5 U.S.C. § 555(b) (1982).

**20.** 5 U.S.C. § 706(a) (1982); *see Costle v. Pacific Legal Foundation,* 445 U.S. 198, 220 n. 14, 100 S.Ct. 1095, 1108 n. 14, 63 L.Ed.2d 329 (1980).

**21.** Brief for Appellants at 6.

**22.** Brief for Appellees at 5–6, 25.

**23.** Brief for Appellants at 27, Brief for Appellees at 9.

**24.** Transcript of Oral Argument at 27.

lay.[25] None of these cases contains a generic test for determining whether agency action has been unreasonably delayed. That is a result of the necessary flexibility of the core concept—"reasonableness." In most areas of the law, the question of reasonableness is closely tied to the particular facts of the case.[26] The same is true of any analysis of a claim of unreasonable delay. Each case must be analyzed according to its own unique circumstances. Some agency action will have a timetable mandated by statute.[27] Other action will take place under difficult circumstances for the agency. For example, in this case the question of reasonableness must be placed in the context of CAB's eminent demise on 31 December 1984, with the consequence that CAB's workforce has been steadily diminishing.[28] Each case will present its own slightly different set of factors to consider.

■ However, a five year delay in adjudicating claims for a form of unemployment assistance payments would be difficult under *any* set of circumstances. As we have explained elsewhere, "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake."[29] In *MCI Telecommunications Corp. v. FCC,* we explained that "many of the same considerations that impelled judicial protection of the right to a 'speedy trial' in criminal cases or implementation of civil decrees with all deliberate speed are not inapposite in agency deliberations."[30] In the *MCI*

case, involving review of tariff revisions under 47 U.S.C. § 204, we found a four year delay to be unreasonable.[31] The task before the agency in this case is no more complex than the task the FCC faced in *MCI.* Neither do any other of the relevant considerations in this case adequately excuse the agency. Viewing the five year delay in this case against the backdrop of all the relevant factual circumstances, we find that CAB has unreasonably delayed acting on the applications for section 43 determination.

Consistent with this holding, we have previously requested CAB to furnish us with the dates by which it intends to reach a decision on those applications received prior to 1 September 1983. CAB has responded, informing the Court that it "will be unable to reach a final decision with respect to any of the pending applications before the Board goes out of existence on December 31, 1984."[32] It appears that even in the one hearing which has been completed, the administrative law judge will not reach his decision in time for CAB to act. All other applications have yet to pass through the hearing process before an Administrative Law Judge. CAB estimates that the time required for even an expedited hearing process would be several months. In addition, section 43 of the Air Line Deregulation Act has recently been declared unconstitutional by the District Court for the District of Columbia[33] because of the presence of a legislative veto

---

**25.** *PCHRG v. FDA,* 740 F.2d 21 (D.C.Cir.1984); *PCHRG v. Auchter,* 702 F.2d 1150 (D.C.Cir.1983); *PEPCO v. ICC,* 702 F.2d 1026, supp. op. 702 F.2d 1026 (D.C.Cir.1983); *MCI Telecommunications Corp. v. FCC,* 627 F.2d 322 (D.C.Cir.1980); *Nader v. FCC,* 520 F.2d 182 (D.C.Cir.1975).

**26.** *See, e.g.,* W. KEETON, D. DOBBS, R. KEETON & D. OWEN, PROSSER AND KEETON ON TORTS § 32 (5th ed. 1984).

**27.** *See, e.g.,* 49 U.S.C. § 1371(c) (1982) (route and certificate applications must be set for hearing, dismissed, or considered for simplified proceedings within 90 days).

**28.** Transcript of Oral Argument at 26.

**29.** *TRAC,* Nos. 84–1035 and 84–5077, slip op. at 20.

**30.** 627 F.2d 322 at 340–41 (D.C.Cir.1980).

**31.** 627 F.2d at 324–25.

**32.** Letter to the Court from counsel for CAB, filed 15 October 1984.

**33.** *Alaska Air Lines, Inc. v. Donovan,* 594 F.Supp. 92 (D.D.C.1984). That decision is now on appeal before this Court.

provision. Several parties have proposed stays of their proceedings until the constitutionality of section 43 is resolved. The Board has granted some of those motions and is considering staying all such proceedings.

Given the unique circumstances of termination of the agency, together with the stays related to the legislative veto issue, this Court will not follow up its finding of unreasonable delay with any further order that CAB act before 31 December 1984. That would be the judicial equivalent of spurring a dead horse, or at least a dying one. Rather than require a specific date of disposition, this Court will retain jurisdiction over this case, and order CAB to give an accounting of its progress on the section 43 determinations every 30 days, beginning 30 days from the issuance of this opinion, through 31 December 1984.

■ On 1 January 1985 CAB will go out of existence, and its authority under section 43 will be transferred to the Department of Transportation.[34] However, we see no reason why that should return us to the days of *Snyder v. Buck.*[35] Rule 25(d) of the Federal Rules of Civil Procedure provides for the automatic substitution of public officers upon their death or separation from office.[36] In ALPA's original complaint in federal district court, ALPA sued the Civil Aeronautics Board and the individual members by name. According to the terms of Rule 25(d), when a public officer "ceases to hold office" during the pendency of an action, "the action does not abate and his successor is automatically substituted as a party."[37] In this case the successors will be the designated officials of the Department of Transportation. At this point in time, it is not possible to state with certainty who those officials will be in January of next year. That does not alter the fact that this substitution will occur automatically, by force of law. ALPA may make a motion for an order of substitution at that time, designating the proper officials. We stress once again that irrespective of any formal order, this substitution is automatic, with no lapse in jurisdiction.

Since the Rule makes substitution automatic, it does away with the former Rule's requirement of a showing of substantial need for continuing and maintaining the action. As the Advisory Committee Note to the 1963 amendment says, "where the successor does not intend to pursue the policy of his predecessor which gave rise to the lawsuit, it will be open to him, after substitution ... to take ... appropriate steps to avert a judgment or decree."[38] The Department of Transportation will re-

**34.** 49 U.S.C. § 1552(i) (1982).

**35.** 340 U.S. 15, 71 S.Ct. 93, 95 L.Ed. 15 (1950).

**36.** FED.R.CIV.P. 25(d), 28 U.S.C.

**37.** *Id.* The fact that the substitution of parties in this case also involves a substitution of one federal agency for another does not affect the applicability of Rule 25(d). Although the Rule speaks in terms of substituting one officer for another, the reasoning and purpose of the Rule apply a fortiori to the substitution of federal agencies. Both CAB and the Department of Transportation are subject to judicial review in this Court. *See* 49 U.S.C. § 1486(f) (1982) (CAB); 49 U.S.C. § 1655(h) (1982) (DOT). Even in the constitutionally more sensitive area of suits against state agencies, courts have held that when relevant functions have been transferred from one office to another, officials who now have the responsibility may be substituted for those who formerly had it. *See, e.g., Wright v. County School Bd.,* 309 F.Supp. 671, 677 (E.D.

Va.1970), *rev'd on other grounds sub nom. Wright v. Council of Emporia,* 442 F.2d 570 (4th Cir.1971); *rev'd* 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972). *Wright* involved the substitution of a newly created city school district for an existing county school district. The Supreme Court accepted the substitution, 407 U.S. at 458 n. 10, 92 S.Ct. at 2201 n. 10.

This Court's experience with the demise of federal agencies has been very limited. However, nothing in the Rule or in the statutes allowing judicial review over these two federal agencies dispels the logical conclusion that, just as one officer can be substituted by the successor to his authority, so can one federal agency be substituted by another federal agency taking over its functions during the pendency of a case. Of course, very different principles would apply in an action involving state officers and their agencies, particularly those principles embodied in the eleventh amendment.

**38.** 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1960 (1972).

ceive these cases under a holding that CAB, the predecessor-defendant, has unreasonably delayed agency action. We will expect that, following automatic substitution as a respondent on 1 January 1985, the Department of Transportation be prepared to inform this Court of the manner in which it intends to expedite resolution of these claims.

## C. *The Claim of Bias*

As we have previously noted,[39] the principles supporting exclusive jurisdiction in the Court of Appeals over claims of unreasonable delay equally support exclusive jurisdiction over an interlocutory claim of bias. Such claims come under the rubric of our general holding in TRAC that this Court has exclusive jurisdiction over suits seeking relief which might affect the Court of Appeals' future statutory power of review. In the present case the crux of the bias claim is a series of statements made by Chairman MacKinnon in May of 1982 concerning the cause of Braniff International Airways' bankruptcy. ALPA also has alleged that by virtue of Chairman MacKinnon's office, he has introduced bias into the minds of the other Board members.[40]

■ The usual presumption in favor of withholding judicial review until after final agency action applies with even greater force in the context of a bias claim than it does with a claim of unreasonable delay. Unlike unreasonable delay, bias does not pose the threat of totally defeating the Court of Appeals' power of review. Also, claims of bias do not have a congressional mandate analogous to 5 U.S.C. § 706, instructing courts to compel agency action unreasonably delayed. Therefore, the arguments for deferring review merit increased attention. As this Court has previously explained:

The administrative proceedings cannot be stopped to allow for excursions in the courts with prolonged evidentiary hearings; the time for that in a proper case is when an aggrieved litigant seeks judicial review of agency action having preserved the point of claimed disqualification in the administrative hearing .... To stay the administrative processes while a court was engaged in an extended inquiry into the claimed disqualification of members of the administrative body could lead to a breakdown in the administrative process which has long been criticized for its slow pace.[41]

■ In the present case a judicial probe into the bias question would only further delay the section 43 proceedings. Therefore, although we recognize our jurisdiction over interlocutory claims of bias, we will take no action on the merits of the bias claim at this time.

ALPA also argues that since the Department of Transportation was a party in pending section 43 cases before the Board, and took a position against the employee actions, that therefore the Department of Transportation is also biased.[42] However, the litigating position of some members of the Department of Transportation does not conclusively establish bias. We cannot say that the same people who took a litigating position will be the ones adjudicating these section 43 determinations next year. It is a normal part of agency operations to have some members of an agency litigating cases and other members adjudicating them. Bias in the Department of Transportation thus remains an issue to be brought and argued later, if at all.

## III. CONCLUSION

We find that CAB has unreasonably delayed agency action on section 43 determinations. Accordingly, we order that the Court's mandate shall issue immediately, and that CAB shall report to this Court on

---

**39.** *See supra* p. 84.

**40.** Joint Appendix at 23–25, Complaint of Air Line Pilots Ass'n, ¶¶ 41–51.

**41.** *SEC v. R.A. Holman & Co.,* 323 F.2d 284, 287 (D.C.Cir.), *cert. denied,* 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963); *see also Touche Ross & Co. v. SEC,* 609 F.2d 570 (2d Cir.1979).

**42.** Brief for Appellants at 22–23.

its progress in these cases every 30 days, beginning 30 days from the issuance of this opinion. In addition, the Department of Transportation will automatically be substituted as a respondent in this case on 1 January 1985.

We will review any complaint of bias after final and reviewable action by either of the agencies involved.

*So Ordered.*